UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                              Case No.: 09-37564-EPK

LUCKY CHASE III, LLC,                               Chapter 11

    Debtor.
_____/

**DEBTOR-IN POSSESSION'S EXPEDITED MOTION FOR
AUTHORITY TO USE CASH COLLATERAL AND TO PROVIDE
ADEQUATE PROTECTION AND SCHEDULE HEARING**

\*\* **Emergency Hearing Requested Pursuant to Local Rule 9013-1(F) & (G)**\*\*

> The above-captioned debtors–in-possession request an emergency hearing in this matter to prevent immediate and irreparable harm that would occur if the Debtor does not have immediate access to the use of cash collateral to fund the continued operation of its business. As such, the Debtor requests an emergency hearing as authorized by Local Rules 9013-1(F) and (G) in this matter as soon as possible.

Debtor-in-Possession, Lucky Chase III, LLC (the "**Debtor**"), by and through its undersigned counsel, files this Motion for Authority to Use Cash Collateral (the "**Motion**"), pursuant to 11 U.S.C. §§ 105 and 363, and in support thereof, respectfully states as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

2. The statutory predicate for the relief requested herein is 11 U.S.C. §§ 105, 361, 362, and 363.

1

## BACKGROUND

3.     On December 14, 2009, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "**Petition Date**") to restructure its debts and explore opportunities to cut expenses.

4.     Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtor is operating its business and managing its affairs as debtor-in possession. As of the date hereof, no trustee, examiner, or statutory committee has been appointed in these Chapter 11 cases.

5.     The Debtor is a Florida limited liability company incorporated under Florida law on July 18, 2005 that currently holds title to 182 condominium conversion units at the San Michele Condominium located at 8901 Okeechobee Boulevard, West Palm Beach, Florida 33411 (the "**Property**"). The Debtor's primary business is to sell and rent condominium conversion units. The Debtor's principal place of business is located at 1502 Teal Trace, Pittsburg, Pennsylvania 15237.

6.     The Debtor's managing member is Scott Deaktor and its other two members are Marcia Deaktor and Marsha Deaktor.

7.     In order to provide the most accurate appraisal possible, the Debtor hired Valinotti Appraisals, Inc. ("**Valinotti**") to thoroughly inspect the Property and the surrounding market on October 15, 2009; gather information on zoning, taxes and other governmental regulations affecting the Property; and researching the market for comparable rentals and improved sales relevant to the Property.

8.     Upon due consideration of the preceding factors, Valinotti determined that the present fair market value of the Property is approximately $19,500,000.00. *See* the Appraisal Report attached hereto as **Exhibit "A."**

9.  Upon information and belief, the Debtor's prepetition secured creditor is Regions Bank (the "**Secured Creditor**").  The Debtor reserves the right to challenge the validity, priority and extent of the Secured Creditor's liens against the Debtor's assets.

10.  By this motion, the Debtor seeks the entry of an order authorizing the use of cash collateral pursuant to 11 U.S.C. § 363, *Federal Rules of Bankruptcy Procedure* 4001(b)(2) and Local Rule 9013-1 (F) & (G) since any cash collateral generated by the Debtor may constitute the cash collateral of the Secured Creditor.

## CASH COLLATERAL AND THE RELIEF SOUGHT BY THE DEBTOR

11.  The Debtor's use of property of its estate is governed by section 363 of the Bankruptcy Code, which provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).  A debtor-in-possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with section 363 of the Bankruptcy Code.  *See* 11 U.S.C. § 1107(a).

12.  When a Chapter 11 debtor-in-possession is authorized to operate its business, it may use property of its estate in the ordinary course of business, but is absolutely prohibited from using cash collateral absent consent of the secured creditor or court authorization. 11 U.S.C. § 363(c)(2); *see also In re Kahn*, 86 B.R. 506 (Bankr. W.D. Mich. 1988); *In re Westport-Sandpiper Associates Ltd. Partnership*, 116 B.R. 355 (Bankr. D. Conn. 1990) (Debtor may not

3

use cash collateral unless entity that has interest in it consents or the debtor proves that interest of that entity is adequately protected).

13. "Cash collateral" is defined by the Bankruptcy Code as, "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . . ." 11 U.S.C. § 363(a).

14. As set forth in the budget, incorporated herein and attached hereto as **Exhibit "B"** (the "**Budget**"), the Debtor requires the use of cash collateral to fund all necessary operating expenses of the Debtor's business. In order to ensure that the Debtor operates effectively throughout these bankruptcy proceedings, the Debtor also requests permission to deviate from the budget in the amount of ten (10) percent.

15. The Debtor will suffer immediate and irreparable harm if it is not authorized to use cash collateral to fund the items set forth in the Budget. Absent such authorization, the Debtor will not be able to pay insurance, utilities and otherwise maintain and protect the real property. Without the use of cash collateral to pay ongoing operating expenses, the Debtor will be required to discontinue its business operations, which would cause immediate and irreparable harm not only to the Chapter 11 estate but to the potential recovery of creditors. It is only through the Debtor's continued business activities and the generation of revenues therefrom that the Debtor will be able to continue operating.

16. The Debtor acknowledges that the Secured Creditor, assuming that the Secured Creditor is properly secured and perfected in the cash collateral, may have a lien on the cash collateral in accordance with 11 U.S.C. §§ 361 and 363. In connection therewith and in an abundance of caution, the Debtor seeks the use of cash collateral in its operations and, as such, if

necessary, it will provide adequate protection to the Secured Creditors pursuant to the terms hereof.

17.     Therefore, the Debtor requests that the Court conduct a preliminary hearing pursuant to Rule 4001(b)(2) of the *Federal Rules of Bankruptcy Procedure* and authorize the Debtor to use cash collateral on an interim basis pending a final hearing in accordance with the Budget.

18.     In addition to the protections set forth below, the Secured Creditor is adequately protected in that the Debtor's proposed Budget illustrates that the Debtor will be operating on a cash flow positive basis. Additionally, as adequate protection, the Debtor's proposed Budget proposes to pay the Secured Creditor monthly interest in the amount of $28,000.00. The Debtor also agrees to grant the Secured Creditor a replacement lien on any new receivables generated by the Debtor. Accordingly, the Secured Creditor's collateral is not being impaired by the Debtor's requested use herein.

19.     Further, the Debtor proposes to use the cash collateral in accordance with the terms of the Budget prepared by the Debtor. The Debtor also requests that it be authorized: (i) to exceed any line item on the budget by an amount equal to ten (10) percent of each such line item; or (ii) to exceed any line item by more than ten (10) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10) percent in the aggregate of the total budget.

20.     Supplemental to the replacement liens and the Debtor's making monthly interest payments to the Secured Creditor, the Debtor will furnish the Secured Creditor with such financial and other information as the Secured Creditor reasonably requests with respect to the Debtor's operations.

## APPLICABLE AUTHORITY FOR RELIEF REQUESTED

### A. The Secured Creditor Will Be Adequately Protected by Replacement Liens on Post-Petition Assets to the Extent its Prepetition Collateral Is Diminished by the Debtor's Use of Cash Collateral.

21.     The Bankruptcy Code does not explicitly define "adequate protection" but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditors' interest in such property.  11 U.S.C. § 361.  Adequate protection may be provided by (i) making "a cash payment or periodic cash payments to [an] entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title . . . results in a decrease in the value of [the] entity's interest in such property," (2) "providing to [an] entity an additional or replacement lien to the extent that such ... use . . . results in a decrease in the value of [the] entity's interest in such property" or (3) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." 11 U.S.C. §§ 361(1), (2), (3); *see In re Potvin Lumber Company, Inc.*, 24 B.R. 54 (Bankr. D. Vt. 1982) (ordering that the debtor could use cash collateral, and finding that the bank was adequately protected because the total value of the debtor's personal property exceeded the bank's indebtedness); *see also In re Coventry Commons Associates*, 149 B.R. 109 (Bankr. E.D. Mich. 1992); *In re Resolution Trust Company v. Swedeland Development Group. Inc. (In re Swedeland Development Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994).

22.     Adequate protection is to be determined on a case-by-case factual analysis. *See Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *see also* S. Rep. No. 95-989, 95th Cong., 2d Sess. 54 (1978).  For example, in *O'Connor*, the court held that "[i]n order to encourage the debtors' efforts in the formative period prior to the proposal of a reorganization, the court must

be flexible in applying the adequate protection standard." *O'Connor*, 808 F.2d at 1396. (citations omitted). *See also In re Quality Interiors, Inc.*, 127 BR. 391 (Bankr. N.D. Ohio 1991) (holding that the granting of a replacement lien provided adequate protection).

23.     Adequate protection is meant to ensure that the secured creditors receive the value for which it originally bargained pre-bankruptcy. *Swedeland Dev. Group., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (citing *In re O'Connor*, 808 F.2d 393, 1396–97 (10h Cir. 1987)). Courts have noted that the essence of adequate protection is the assurance of the maintenance and continued responsibility of the lien value during the interim between the filing and the confirmation. *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. or. 1982). The focus of the requirement is to protect secured creditors from diminution in value during the use period. *See In Re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Becker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

24.     Simply stated, adequate protection is necessary only to the extent the use of the secured creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e); *see United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370-73 (1988) (the "interest in property" entitled to protection is "the value of the collateral" securing the claim). As the court in *In re Megan Racine Assoc., Inc.*, 202 B.R. 660 (Bankr. N.D.N.Y. 1996) noted:

> Adequate protection . . . is intended to compensate a creditor for any decrease in the value of its security interest in collateral during the pendency of the debtor's reorganization that is due to the imposition of the stay or is traceable to the use of such property.

*Id.* at 663.

25.     Here, the Secured Creditor is only entitled to protection against the decline in value of its prepetition collateral resulting from the Debtor's use of cash collateral. The granting

7

of replacement liens provides the Secured Creditor with more than sufficient adequate protection within the meaning of sections 361 and 363(e) of the Bankruptcy Code.

26. As noted above, section 361(2) of the Bankruptcy Code expressly provides that the granting of a replacement lien constitutes a means of providing adequate protection. 11 U.S.C. § 361(2). In the instant case, granting the Secured Creditor replacement liens on postpetition collateral to the extent its prepetition collateral is diminished by the Debtor's use of cash collateral will provide them with sufficient adequate protection. *See, e.g., O'Connor*, 808 F.2d 1393; *In re Coody*, 59 B.R. 164, 167 (Bankr. M.D. Ga. 1986); *In re Dixie-Shamrock Oil & Gas, Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984).

27. Further, the Debtor proposes to use the cash collateral in accordance with the terms of the Budget prepared by the Debtor. As reflected on the proposed Budget, the Debtor proposes to use approximately $118,110.69 collateral for the next thirty (30) days. During the same period, the Debtor anticipates receipt of over $120,000.00 in post-petition revenues.

### B. The Secured Creditor Is Adequately Protected by a Significant Equity Cushion in its Collateral.

28. Additionally, the interest of the Secured Creditor is also adequately protected by an equity cushion. The existence of value in collateral in excess of the amount of the secured claim (i.e., an equity cushion) provides the classic form of protection for secured debt and can itself provide sufficient adequate protection. *See Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396; *In re Llewellyn*, 27 B.R. 481 (Bankr. M.D. Pa. 1983); *Dixie-Shamrock Oil & Gas, Inc.*, 39 B.R. at 117-118 (holding that equity cushion of $500,000 on $7.1 million debt provided adequate protection); *In re McGowan*, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980 (holding that 10% equity cushion provided adequate protection); *In re Elmira Litho, Inc.*, 174 B.R. 892, 904 (Bankr.

S.D.N.Y. 1994); *In re McKillips*, 81 B.R. 454, 458 (N.D. Ill. 1987); *In re Phoenix Steel Corp.*, 39 B.R. 218, 224 (D. Del. 1984).

29. In determining the existence and extent of an equity cushion, most courts value the collateral on a going concern or fair market value basis. *See, e.g., In re Winthrop Old Farm Nurseries, Inc.*, 50 F.3d 72, 74-75 (1st Cir. 1995) (valuing creditor's interest in property to be retained by debtor at its "going-concern or fair market value with no deduction for hypothetical costs of sale"); *In re McClurkin*, 31 F.3d 401, 405 (6th Cir. 1994); *In re Automatic Voting Machines Corp.*, 26 B.R. 970 (Bankr. W.D.N.Y. 1983); *In re OPL Components, Inc.*, 20 B.R. 342 (Bankr. E.D.N.Y. 1982).

30. It is particularly appropriate for a bankruptcy court to value collateral on a going concern or fair market value basis early in a bankruptcy case so the debtor is provided an opportunity to reorganize, and any doubt should be resolved in favor of facilitating the debtor's attempt at reorganization. *In re A&B Heating & Air Conditioning, Inc.*, 48 B.R. 493, 496 (Bankr. N.D. Fla. 1985); *In re Hoffman*, 51 B.R. 42, 47 (Bankr. W.D. Ark. 1985); *In re Heatron, Inc.*, 6 B.R. 493, 496 (Bankr. W.D. Mo. 1980). As the *Heatron* court stated in granting the debtor's motion to use cash collateral:

> The policy of the Code, as with the predecessor statutes, is to encourage reorganization if there is a reasonable possibility of success.... At the beginning of the reorganization process, the Court must work with less evidence than might be desirable and should resolve issues in favor of the reorganization, where the evidence is conflicting.

*Id.* at 496. The court in *O'Connor*, 808 F.2d 1393 summarized the principle as follows:

> Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estates, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor . . . are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral should be permitted

>during the early stages of administration. The first effort of the court must be to insure the value of the collateral will be preserved. Yet, prior to confirmation of a plan of reorganization, the test of that protection is not by the same measurements applied to the treatment of a secured creditor in a proposed plan. In order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard.

*Id.* at 1397-98; *see also In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 75 (Bankr. 9th Cir. 1994) (the debtor should be given substantial latitude during the initial phases of the case if it is plausible that it can propose a confirmable plan).

31. In the instant case, the Secured Creditor has an equity cushion. Specifically, the outstanding amount owing to the Secured Creditor is approximately $12,507,745.25 and the Debtor believes the going concern value of the Property is worth in excess of $19,500,000.00.

32. This equity cushion is more than sufficient adequate protection for the limited use of cash collateral requested herein. *See, e.g., In re Monnier*, 755 F.2d 1336, 1340 (8th Cir. 1985) (25% equity cushion was adequate); *In re Industrial Valley Refrigerating and Air Conditioning Supplies*, 77 B.R. 15, 22 (Bankr. E.D. Pa. 1987) (equity cushion of approximately 50% was adequate); *McKillips*, 81 B.R. at 458 (equity cushion of 20% or more almost always constitutes adequate protection); *In re Boulders on the River, Inc.*, 164 B.R. 99, 104 (9th Cir. BAP 1994) (11.45% equity cushion was adequate); *In re McGowen*, 6 B.R. 241 (Bankr. E.D. Pa. 1980) (10% equity cushion was adequate).

33. Notwithstanding the equity cushion and the projected increase value in Debtor's collateral, the Debtor's Budget proposes to give the Secured Creditor additional adequate protection in the form of a monthly adequate protection payment in the amount of $28,000.00 until such time as the Debtor and the Secured Creditor resolve the pending claims between the parties (the "**Adequate Protection Payment**").

34. Accordingly, the use of cash collateral will not impair the Secured Creditor's purported security interest, but rather, will increase the value of the collateral for the benefit of the Debtor, the Secured Creditor, and the Debtor's remaining creditors and in light of the circumstances, the Debtor's requested use of cash collateral and the protections afforded to the Secured Creditor herein, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of the Secured Creditor's collateral.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order (i) granting the Motion; (ii) authorizing the Debtor's use of cash collateral in accordance with the attached Budget and provide related adequate protection; (iii) permitting the Debtor to deviate from the Budget in the amount of ten (10) percent to the extent necessary; (iv) scheduling a final hearing in order to authorize the Debtor's use of cash collateral; and (v) granting such other and further relief as this Court may deem just and proper.

Dated: December 18, 2009

**SHRAIBERG, FERRARA & LANDAU, P.A.**
Attorneys for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bshraiberg@sfl-pa.com

By:  /s/ Bradley S. Shraiberg
       Bradley S. Shraiberg
       Florida Bar. No. 121622
       Lenore M. Rosetto
       Florida Bar No 064448
       lrosetto@sfl-pa.com

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing to those parties registered to receive electronic filings on this 18th day of December, 2009, or via U.S. Mail on the 21st day of December, 2009, to all persons on the attached Service List.

**SHRAIBERG, FERRARA & LANDAU, P.A.**
Attorneys for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bshraiberg@sfl-pa.com

By:  /s/ Bradley S. Shraiberg
    Bradley S. Shraiberg
    Florida Bar. No. 121622
    Lenore M. Rosetto
    Florida Bar No 064448
    lrosetto@sfl-pa.com

## SERVICE LIST

## CASE NO. 09-37564-BKC-EPK

**Via CM/ECF:**

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov


**VIA U.S. MAIL**

Region's Bank
c/o Lorraine Wong, Esq.
RPRS, PA
101 NE 3d Ave., #1800
Ft. Laud, FL 33301

Lorraine Wong
RPRS, PA
101 NE 3d Ave, #1800
Ft. Laud., FL 33301

AT&T
P.O. Box 105262
Atlanta, GA 30348-5262

Alpern Rosenthal
339 6th Avenue
Pittsburgh, PA 15222

Andes, Inc.
1705 Kirk Road
West Palm Beach, FL 33406

Anything Carpet Cleaning
6342 Forest Hill Boulevard
Suite 167
West Palm Beach, FL 33415

Barfield McCain
2809 Poinsettia Avenue
West Palm Beach, FL 33407

Commercial Water & Engery Co.
Post Office Box 653609
Miami, FL 33265

Community Planning Associates, Inc.
7100 Camino Real
Suite 300
Boca Raton, FL 33433

Cool Jay's A/C & Refrigeration
210 NE 60th Ave
Fort Lauderdale, FL 33334

Heather Burkett
8935 Okeechobee Blvd.
West Palm Beach, FL 33401

Hollinshead, Mendelson
310 Grant Street
Suite 2901
Pittsburgh, PA 15219

House of Floors
1081 Holland Drive
Boca Raton, FL 33487

Internal Revenue Service
P.O. Box 105017
Atlanta, GA 30348-5017

Katzman Garfinkel
1501 NW 49th Street
Suite 202
Fort Lauderdale, FL 33309

Lowenhaupt & Sawyers
7765 SW 87th Avenue
Suite 201
Miami, FL 33173

Palm Beach County Tax Collector
301 North Olive Ave
West Palm Beach, FL 33401

Prime Pools Service & Repair, Inc.
1954 Shadetree Way
Unit C
West Palm Beach, FL 33406

RE Michael Company, Inc.
3010 Winter Lake Road
Lakeland, FL 33803

San Michele Andros Isle Condo Assoc Inc
c/o Deaktor Development, Inc.
1502 Teal Trace
Pittsburgh, PA 15237

Sign-A-Rama
1367 North Military Trail
West Palm Beach, FL 33409

Tropical Carpet Sales, Inc.
8706 Woodberry Ct.
Lake Worth, FL 33467